IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH MANUEL URESTI, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3094 |
| | § | |
| BRYAN COLLIER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Paroles Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Former state inmate Joseph Manuel Uresti filed this federal habeas corpus action under 28 U.S.C. § 2254 to challenge the conditions imposed on his supervised release from prison. In an order entered on December 23, 2004, the Court granted in part and denied in part a motion for summary judgment filed by the respondent. (Docket Entry No. 7). At the Court's request, the respondent has filed a supplemental motion for summary judgment. (Docket Entry No. 9). Uresti has filed a response. (Docket Entry No. 16). After considering all of the pleadings, the state court records, and the applicable law, the respondent's supplemental motion for summary judgment is granted, and this case is dismissed for reasons set forth below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The background and procedural history have been set forth previously in the order entered on December 23, 2004. It bears repeating that Uresti was released from the

Correctional Institutions Division of the Texas Department of Criminal Justice ("TDCJ") on September 16, 2003, where he had been serving a ten-year prison sentence for burglary of a building with intent to commit theft that occurred in April of 1996.  Prior to the entry of that judgment, Uresti had been convicted of aggravated rape and burglary of a habitation with intent to commit theft in 1977, for which he received a thirty-five year prison sentence.

Uresti does not challenge any of his underlying convictions here.  Instead, he seeks federal habeas corpus relief from certain conditions imposed by the TDCJ Parole Division upon his release from prison onto the form of parole known as mandatory supervision.[1] Because of his aggravated rape conviction, parole officials placed Uresti in the "super intensive supervision" program or SISP, which features "the highest level of supervision provided by the department."  TEX. GOV'T CODE § 508.317.  One of the conditions of release imposed by parole officials required Uresti to reside temporarily at a local half-way house. Another condition required Uresti to wear an electronic monitor with a "Global Positioning System" or "GPS" mechanism to keep track of his location.  Parole officials also elected to impose conditions of supervision under the Texas sex offender registration and child safety zone programs.  According to Uresti's parole certificate, he was ordered to avoid certain zones where "children commonly gather," to register as a sex offender, and to participate in sex offender counseling as instructed by his supervising parole officer.

---

[1]     In Texas, mandatory supervision is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division."  TEX. GOV'T CODE § 508.001(5).

On January 28, 2004, Uresti filed a state habeas corpus application with the trial court pursuant to Article 11.07 of the Texas Code of Criminal Procedure. Uresti sought relief on the grounds that his placement in the half-way house facility constituted unlawful confinement in violation of due process and equal protection. Uresti argued further that imposition of the SISP conditions of release infringed upon his constitutional right to due process, and further posed ex post facto and double jeopardy violations. The trial court considered Uresti's parole records and found that imposition of the SISP conditions of release was authorized by § 508.317 of the Texas Government Code. The trial court further found that Uresti failed to establish that the SISP conditions were imposed in violation of his constitutional rights. The Texas Court of Criminal Appeals agreed that Uresti was not entitled to state habeas corpus relief and denied his application without a written order. *See Ex parte Uresti*, No. 7,241-09 (July 28, 2004).

After the Texas Court of Criminal Appeals denied habeas corpus relief, Uresti filed the pending federal habeas petition on August 3, 2004. In that petition, Uresti appears to argue that he is entitled to relief from the conditions imposed on his supervised release for the following reasons: (1) he was unlawfully confined in a half-way house following his release from prison, instead of released to live at large, in violation of due process and equal protection principles; (2) he was denied release outright because of a capital murder charge that is on his record, but which he did not commit; (3) his placement in a half-way house and imposition of other SISP conditions of release is an ex post facto violation; and (4) he has been forced to comply with conditions of release under the sex offender registration program,

3

by registering and attending counseling, which constitutes additional punishment in violation of the prohibition against double jeopardy.

Citing Uresti's release from confinement, the respondent moved for summary judgment on the first two issues raised in his federal petition, concerning his claims of unlawful confinement and denial of outright release to mandatory supervision.[2]  The Court granted summary judgment on these issues in the order entered on December 23, 2004, but requested a supplemental motion to address the remaining claims in the petition.[3]  Uresti's pleadings are difficult to parse because he frequently switches theories.  Applying the liberal construction applicable to *pro se* pleadings, the only remaining claims appear to concern whether the SISP conditions of release were imposed in violation of the Ex Post Facto and Double Jeopardy Clauses.  Uresti appears to argue separately that imposition of the electronic monitoring requirement and the conditions of release applicable to sex offenders violates due process, equal protection, and is also contrary to the prohibition against ex post facto laws and double punishment.  The respondent has filed a supplemental motion for summary judgment on these remaining issues, arguing that Uresti's claims fail as a matter

---

[2]     Uresti was released from prison to mandatory supervision on September 16, 1993. He was then assigned to the Ben Reid Community Correctional Facility, which is a half-way house run by a private company in Houston. When Uresti filed his federal habeas corpus petition, he remained a resident of the half-way house. Thus, Uresti believed erroneously that he had not been technically "released" from prison onto mandatory supervision.  While his federal habeas corpus petition was pending, Uresti was released from the half-way house.

[3]     In ruling on the first summary judgment motion, the Court rejected the other argument raised by the respondent that Uresti's claims were actionable, if at all, under 42 U.S.C. § 1983, and not under the federal habeas corpus statutes.

of law.  Uresti disagrees.  The parties' contentions are addressed below under the applicable standard of review.

## II.   STANDARD OF REVIEW

### A.   Habeas Corpus Review Under 28 U.S.C. § 2254

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). The pending federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  The petitioner bears the burden to prove that he is entitled to habeas corpus relief under this deferential standard.  *See DiLosa v. Cain*, 279 F.3d 259, 262

(5th Cir. 2002).  For claims adjudicated on the merits, a petitioner is not entitled to relief

unless the state court's conclusion:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000).  In addition, any factual

findings made by the state court in deciding a petitioner's claims are presumed correct under

28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing

evidence" to the contrary.

By its plain terms, the AEDPA standard of review found in § 2254(d) applies only to

those claims that were adjudicated on the merits.  Uresti's state court habeas corpus

application lodged only a general complaint about imposition of the SISP conditions of

release.  *See Ex parte Uresti*, No. 7,241-09.  The Texas Court of Criminal Appeals

considered this general complaint and denied relief, finding that imposition of the SISP

conditions in Uresti's case was proper.  As a matter of Texas law, "a denial of relief rather

than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a

claim." *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003) (quoting *Singleton v.

Johnson*, 178 F.3d 381, 384 (5th Cir. 1999)), *cert. denied*, 540 U.S. 1163 (2004).  Therefore,

the AEDPA standard applies only to those claims raised properly by the petitioner before the

Texas Court of Criminal Appeals in his state habeas corpus application.

6

### B.    Summary Judgment

In addition to the standard supplied by the applicable federal habeas corpus statutes, the respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A movant's burden is to point out the absence of evidence supporting the nonmovant's case.  *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; and *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.  *Id.* (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

While it is true that Rule 56 of the Federal Rules of Civil Procedure applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the Fifth Circuit has held that Rule 56 applies only to the extent that it does not conflict with the habeas rules.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases in the District Courts), *cert. granted in part on other grounds, and dism'd*, 541

7

U.S. 931 (2004).  Therefore, 28 U.S.C. § 2254(e)(1) — which mandates that findings of fact made by a state court are "presumed to be correct" — overrides the ordinary rule that, in a summary-judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  *See id*.  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *See id.*

The petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972); *see also Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) ("[I]n this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.").  Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion.  *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III.   DISCUSSION

#### A.   Imposition of SISP Conditions of Release

The SISP regime was adopted by the Texas Legislature in 1997 to provide "the highest level of supervision" afforded for certain inmates released from state prison. TEX. GOV'T CODE § 508.317.  To the extent that Uresti complains that imposition of the SISP conditions of release violated his right to due process, as well as the prohibitions against ex post facto laws and placement in double jeopardy, the Texas Court of Criminal Appeals rejected these claims on state habeas corpus review.  The respondent argues that any claim by Uresti about the SISP conditions does not warrant federal habeas corpus relief.  The Court agrees.  For reasons that follow, a review of the statutory scheme at issue discloses no constitutional violation in its application to Uresti.

Prior to 1997, the Texas adult parole and mandatory supervision statutes were codified in Article 42.18 of the Texas Code of Criminal Procedure.  Section 24 of that statute provided for an "intensive supervision" program upon a prisoner's release from custody:

> Sec. 24. The department shall establish a program to provide intensive supervision to inmates released under the provisions of Subchapter B, Chapter 499, Government Code, and other inmates determined by parole panels or the department to require intensive supervision. The Texas Board of Criminal Justice shall adopt rules that establish standards for determining which inmates require intensive supervision. The program must provide the highest level of supervision provided by the department.

TEX. CODE CRIM. PROC. art. 42.18 § 24 (Vernon Supp. 1996).  Separate portions of the statute provided for electronic monitoring and conditions of release for prisoners designated as sex offenders.  *See id*. §§ 22-23.

9

In 1997, the Texas intensive supervision statute was revised and codified in § 508.317 of the Texas Government Code, adding a "super intensive supervision" component as follows:

(a)   The department shall establish a program to provide intensive supervision to inmates released under Subchapter B, Chapter 499, and other inmates determined by a parole panel or the department to require intensive supervision.

(b)   The Texas Board of Criminal Justice shall adopt rules that establish standards for determining which inmates require intensive supervision.

(c)   The program must provide the level of supervision the department provides that is higher than any level of supervision other than the level of supervision described by Subsection (d).

(d)   The department shall establish a program to provide super-intensive supervision to inmates released on parole or mandatory supervision and determined by parole panels to require super-intensive supervision.   The program must provide the highest level of supervision provided by the department.

TEX. GOV'T CODE § 508.317 (Vernon 2004).  Noting that his underlying convictions were entered well before the SISP statute was enacted in 1997, Uresti maintains that this revised statute does not apply to him.

According to legislative history for the 1997 statute, the Texas Legislature recognized that higher levels of supervision were needed for certain inmates who were eligible for early release on parole:

. . . The legislature finds that the release of dangerous inmates from the Texas Department of Criminal Justice sentenced under prior Texas law creates the potential for a continuing threat to public safety.

10

The legislature finds that current Texas law eliminates the chance that dangerous inmates will be automatically released from Texas prisons. However, many inmates sentenced under prior Texas law are eligible for various forms of early release.  Because the United States Constitution precludes increasing the sentences of dangerous inmates after their convictions, and because prior Texas law allows the release of these inmates before the completion of their sentences, there is a need to better supervise these inmates on release.

The legislature finds that there is a compelling state interest in placing inmates released on parole and mandatory supervision that will best protect public safety.  The level of supervision of inmates released from the Texas Department of Criminal Justice should be appropriate based on their likelihood of committing new offenses, the nature of their original offenses, their performance in prison programs designed to rehabilitate inmates, and any other factor deemed by the parole panel to be relevant to their status.

The legislature finds that there is a need for a program of intensive supervision of certain inmates whose histories indicate a propensity for violence.  Regardless of whether an inmate's instant offense is a violent offense, there is a need for careful evaluation and review of each inmate released from prison to determine the need for supervision of the inmate . . . .

Tex. H.B. 2918, § 6(b), 75th Leg. (1997) (Respondent's Supplemental Motion for Summary Judgment, Exhibit A).  The legislative history plainly shows that the statute's purpose was to protect public safety and that the Texas Legislature further intended for the SISP conditions of release to apply retroactively to eligible inmates who had been sentenced "under prior Texas law."  *Id.*

TDCJ adopted policies and procedures pursuant to the 1997 super intensive supervision statute that were designed to determine which offenders were eligible for placement in this program of heightened supervision.  Current policy provides that the

11

following inmates must be referred to an "SISP Panel" for possible placement in the program:

A. Prior to release on parole or mandatory supervision, offenders who meet one or more of the following criteria shall be referred to the SISP Board Panel (hereinafter referred to as the "SISP Panel") for possible SISP placement:

    1. A past or current conviction for one of the following offenses:

        a. Murder or Capital Murder;

        b. Criminal Solicitation of a Capital Offense;

        c. Kidnapping or Aggravated Kidnapping;

        d. Indecency with a Child;

        e. Sexual Assault or Aggravated Sexual Assault;

        f. Aggravated Assault;

        g. Sexual Performance by a Child;

        h. Possession or Promotion of Child Pornography;

        i. Stalking (felony or misdemeanor conviction);

        j. Injury to a Child, Elderly Individual, or Disabled Individual;

        k. Deadly Conduct;

        l. Robbery or Aggravated Robbery;

        m. Burglary (if 1st degree and resulting in bodily injury);

        n. Arson;

        o. Retaliation.

Texas Department of Criminal Justice, Parole Division Policy and Operating Procedure No. 3.15.1 (June 1, 2001).

Uresti suggests that application of the SISP conditions of release violates due process because he has never been convicted of capital murder.[4]  However, it is undisputed by Uresti that he has a past conviction for aggravated sexual assault, which makes him eligible for SISP conditions of release under the terms of the policy.  Other factors exist that support the decision by parole officials to place him in this program of heightened supervision.  According to the summary found in Uresti's parole materials, the facts underlying the rape are egregious.  (Respondent's Supplemental Summary Judgment Motion, Exhibit C).  The summary reports that Uresti encountered his female victim while attempting to burglarize her apartment.  Uresti knocked her bridgework into her throat with a blow to her head.  Uresti then raped the victim after beating her with his fists.  After raping the victim, Uresti tied her to a mattress and set it on fire.  He later dragged the victim out of the residence, but the fire caused severe damage to her right hand.  Eventually, her arm required amputation below the elbow.  In addition to the aggravated rape, the materials indicate that Uresti has had several other arrests for various offenses and a history of substance abuse.  He also had another

---

[4]     The records reference an arrest for murder involving the death of a young woman who was killed with a pickaxe, possibly when Uresti was a juvenile.  (Respondent's Supplemental Summary Judgment Motion, Exhibit C).  There is no record that Uresti was convicted of this offense.  Although the record reports that Uresti later made statements admitting that he had committed the murder, but Uresti disputes this.  Even without considering the murder, however, the record contains more than ample evidence showing that Uresti's conduct warrants imposition of SISP conditions of release under the governing statute because of his conviction for aggravated rape.

conviction for burglary of a habitation with intent to commit theft in which he held a knife to the throat of a ten-year-old girl while demanding to know where her mother hid the jewelry.  Uresti does not refute any of these details or the fact that his 1977 conviction for aggravated rape qualifies him for participation in the SISP parole regime.  Likewise, Uresti does not refute the fact that the change in law applying the Texas super intensive supervision parole scheme to certain eligible offenders was expressly made retroactive by the Texas Legislature "regardless of when the offense for which the inmate was serving a sentence before release was committed."  Tex. H.B. 2918, § 10, 75th Leg. (1997).

To the extent that Uresti contends that the revised super intensive supervision parole statute constitutes an ex post facto law, or that his placement in SISP qualifies as punishment imposed in violation of the prohibition against double jeopardy, his arguments are without merit.  Article I, Section 10 of the United States Constitution provides that no state shall pass an ex post facto law, meaning that states are prohibited from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  *Weaver v. Graham*, 450 U.S. 24, 28 (1981).  Thus, the following two elements must be present for an ex post facto violation to occur: "(1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes."  *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004) (citations and quotation omitted).  Because the parole statute at issue is plainly retroactive, the existence of an ex post facto violation depends on whether the statute constitutes

14

additional criminal punishment for the crimes previously committed.  *See Kansas v. Hendricks*, 521 U.S. 346, 371 (1997).

To determine whether a law imposes punishment for ex post facto purposes, courts apply the so-called "intents-effects" test.  *Moore v. Avoyelles Correctional Ctr.*, 253 F.3d 870, 872 (5th Cir.), *cert. denied sub nom. Moore v. Kaylo*, 534 U.S. 1008 (2001).  This test requires two inquiries: (1) whether the legislature intended the sanction to be punitive; and (2) whether the sanction is so punitive in effect that the statute cannot be legitimately viewed as regulatory or civil in nature.  *Id.* (citing *United States v. Ursery*, 518 U.S. 267, 288 (1996)).  If the legislature's stated intent was not punitive, "only the clearest proof" of a statute's punitive effect will suffice to transform an enactment into a criminal penalty.  *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997) (citations omitted)).

Uresti fails to show that the SISP parole regime is punitive for purposes of demonstrating an ex post facto violation under either prong of the above-referenced "intents-effects" test.  The legislative history, as set forth above, emphasizes that the statute was drafted to further the compelling state interest of protecting public safety, and not to punish.  Thus, the legislative intent is plainly not punitive.  Moreover, Uresti has presented no proof that the conditions are punitive or that the retroactive effect of the statute otherwise imposes punishment rising to the level of an ex post facto violation.  The Fifth Circuit has already recognized as much, holding that changes in the Texas parole laws imposing SISP restrictions on parole do not constitute an ex post facto violation.  *See Cruz v. Texas Parole*

*Div.*, No. 03-50745, 2004 WL 190251 (5th Cir. Jan. 30, 2004) (unpublished) (citing

*Vineyard v. Keese*, 70 F.3d 1266 (5th Cir. 1995) (unpublished) (holding that changes in

Texas parole laws imposing electronic monitoring, urinalysis, driving restrictions, and

curfew did not constitute an ex post facto violation).

Uresti's failure to demonstrate retroactive punishment in violation of the Ex Post

Facto Clause is also fatal to any alleged double jeopardy claim. The Double Jeopardy Clause

provides that no person shall "be subject for the same offense to be twice put in jeopardy of

life or limb." U.S. CONST. AMEND. V. This clause protects against: (1) a second prosecution

for the same offense after acquittal; (2) a second prosecution for the same offense after

conviction; and (3) multiple punishments for the same offense. *United States v. Dixon*, 509

U.S. 688, 695-96 (1993). In the multiple-punishment context, the Double Jeopardy Clause

protects only against the imposition of multiple *criminal* punishments for the same offense.

*Hudson v. United States*, 522 U.S. 93, 99 (1997). Absent a showing that the SISP statute at

issue imposed additional punishment for a crime, Uresti has no valid claim under the Double

Jeopardy Clause.

In conclusion, Uresti has not established that the SISP conditions of release were

imposed in error in violation of due process. Likewise, because the SISP conditions of

parole are not punitive, Uresti has not demonstrated an ex post facto or double jeopardy

violation in connection with the SISP statute. It follows that Uresti has failed to show that

the state court's ultimate conclusion in denying habeas corpus relief on these questions is

contrary to, or involves an unreasonable application of the law as determined by the Supreme

Court.  *See* 28 U.S.C. § 2254(d)(1).  Accordingly, Uresti is not entitled to federal habeas corpus relief on his general assertion that SISP conditions of release were applied in violation of the constitution.

**B.      Exhaustion and the Doctrine of Procedural Default – Specific Conditions of Release Involving Electronic Monitoring and Sex Offender Restrictions**

Apart from objecting to the imposition of SISP conditions in general, Uresti adds several more specific allegations disputing the imposition of more stringent conditions of release applicable to sex offenders, such as the requirement that Uresti register as a sex offender and attend sex offender counseling.  Uresti also challenges the requirement that he wear an electronic monitor or GPS device.

These conditions of release were reportedly imposed in the parole certificate issued to Uresti upon his release to mandatory supervision in September of 2003.  The respondent correctly notes that Uresti did not challenge any of these conditions specifically in the habeas corpus application that he filed at the state level.  A review of the state court record confirms that Uresti's state application makes no mention of any complaint about electronic monitoring or the sex offender conditions imposed as part of his supervised release.  *See Ex parte Uresti*, No. 7,241-09 at 02-14.  Significantly, the statutes governing the imposition of these conditions of supervised release differ from the SISP statute.[5]  Because Uresti has

---

[5]      The SISP statute is found at § 508.317 of the Texas Government Code.  The Texas sex offender registration program, with its attendant counseling requirement, is found at § 508.186 of the Texas Government Code.  Electronic monitoring of prisoners on parole is authorized by § 508.221 of the Texas Government Code.

changed the factual and legal theories in his federal petition, the respondent argues that any complaint by Uresti about electronic monitoring and the conditions of release applicable to sex offenders is unexhausted and barred from federal habeas corpus review by the doctrine of procedural default.

A federal court may only grant habeas corpus relief to a state prisoner who has exhausted available state remedies. *See* 28 U.S.C. § 2254(b)(1), (c); *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). To exhaust state remedies under the applicable statutory framework, a habeas petitioner must fairly present the substance of his federal claim to the state courts. *See Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2000) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). By requiring habeas petitioners to present their claims in state court before seeking federal review, the doctrine of exhaustion reflects an important policy of federal/state comity. *See Coleman v. Thompson*, 501 U.S. 722, 730-31(1991).

Uresti argues that all of his claims are exhausted because he did complain about the SISP conditions in his state habeas corpus application. Uresti appears to concede, however, that he did not object specifically to the electronic monitoring requirement or the sex offender conditions. The exhaustion requirement is not met where the petitioner presents new legal theories or factual claims in his federal habeas petition. *See Finley*, 243 F.3d at 219 (citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)). Likewise, "the policies of comity and federalism underlying the exhaustion doctrine" require that "new factual allegations in

18

support of a previously asserted legal theory" be first presented to the state court. *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir.), *cert. denied*, 479 U.S. 1010 (1986); *see also Graham v. Johnson*, 94 F.3d 958, 968-69 (5th Cir. 1996).  Because Uresti did not clearly complain at the state habeas corpus level about the electronic monitoring or sex offender conditions of release, he deprived the Texas courts of an opportunity to address his claims about his eligibility for these conditions.  The Court concludes therefore that Uresti's claims involving these conditions are unexhausted.

It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley*, 243 F.3d at 220 (citing *Coleman*, 501 U.S. at 735 n.1, and *Sones*, 61 F.3d at 416).  If this Court were to dismiss the petition without prejudice for lack of exhaustion and force Uresti to return to state court, his prospect for presenting another habeas corpus application is bleak.  Uresti has already applied unsuccessfully for state habeas corpus relief.  Article 11.07, § 4 of the Texas Code of Criminal Procedure prohibits a Texas court from considering a successive habeas corpus application on the merits unless the petition satisfies one of the following exceptions:

> (1)   the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

> (2)    by a preponderance of the evidence, but for a violation of the United
>         States Constitution no rational juror could have found the applicant
>         guilty beyond a reasonable doubt.

TEX. CODE CRIM. PROC. art. 11.07, § 4(a).  Because the complained of conditions of release

were imposed in the September 2003 parole certificate, it appears that Uresti's unexhausted

claims could have and should have been raised in the state habeas corpus application that he

filed in January of 2004.  Uresti offers nothing to disturb this conclusion that a default has

occurred.  Because Texas would bar a second habeas corpus application by the petitioner at

this late date, this default represents an adequate state procedural ground which, in turn, bars

federal review of his claims.  *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633,

642 (5th Cir. 1995)).

      Where a state prisoner has defaulted his federal claims in state court, "federal habeas

review of the claims is barred unless the prisoner can demonstrate cause for the default and

actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S.

at 750.   "This doctrine ensures that federal courts give proper respect to state procedural

rules."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125

(1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause

and prejudice standard is "grounded in concerns of comity and federalism"); *Coleman*, 501

U.S. at 750 (recognizing "the important interest in finality served by state procedural rules,

and the significant harm to the States that results from the failure of federal courts to respect

them").

Uresti does not allege or show that he is actually innocent or otherwise establish that the fundamental-miscarriage exception applies in this case.[6] Absent a showing that the fundamental-miscarriage exception applies, Uresti's claims are procedurally barred unless he can demonstrate both cause and actual prejudice for the default.  The Supreme Court has held that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.), *cert. denied*, 520 U.S. 1267 (1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.  *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000), *cert. dism'd*, 531 U.S. 1134 (2001) (citing *Strickler v. Green*, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999)).

---

[6]     The fundamental-miscarriage-of-justice exception to the doctrine of procedural default is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him.  *See Coleman*, 501 U.S. at 750; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.), *cert. denied*, 514 U.S. 1123 (1995). To make this showing the petitioner must prove that, as a factual matter, he did not commit the crime for which he was convicted. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (citing *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).  "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2000) (quoting *Fairman*, 188 F.3d at 644) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

Uresti makes no effort to establish cause for his failure to exhaust his state court remedies by properly presentinh his claims about the electronic monitoring requirement or the sex offender conditions found in his parole certificate.  Although Uresti proceeds *pro se*, it is well established that neither indigence nor *pro se* status constitutes cause for a petitioner's procedural default.  *See, e.g., McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (recognizing that a petitioner's *pro se* status is not an objective external factor which qualifies as cause for failure to raise a claim) (citing *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992)).  Uresti points to no objective factor external to his defense that prevented his compliance with state procedure and he does not otherwise suggest any explanation for the failure to raise his claims properly in the Texas courts.

Because Uresti has failed to establish cause for his procedural default, this Court need not inquire further.  Nevertheless, for reasons discussed further below, the Court concludes that Uresti also fails to demonstrate actual prejudice because he does not establish a valid claim or otherwise show that the electronic monitoring requirement or sex offender conditions of release were imposed in violation of the constitution.

### 1.    Claims Concerning Electronic Monitoring

Uresti notes in his response to the summary judgment motion that, as of February 2005, he is no longer required to wear a GPS device and that he is therefore no longer subject to electronic monitoring as a condition of release.  Uresti filed this federal habeas corpus action seeking release from the restrictive conditions of parole under which he was confined. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (explaining that, for prisoners seeking

relief from confinement, the sole remedy is to pursue federal habeas corpus relief).  Because Uresti has been released from the electronic monitoring requirement, his challenge to that condition of parole is now moot.  *See Lane v. Williams*, 455 U.S. 624 (1982) (regarding conditions of parole, where a petitioner challenges only the administration of his sentence, and not his underlying conviction, there is no presumption that collateral consequences exist for the purpose of creating an actionable case or controversy once he has been released).

Alternatively, even if his claim is not moot Uresti fails to clearly articulate any constitutional violation in connection with the imposition of the electronic monitoring condition of release in his case.  His conclusory allegations are insufficient to warrant federal habeas corpus relief.  It is true that *pro se* petitions for collateral review are entitled to a liberal construction.  *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  "At the same time, however, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").  Accordingly, Uresti fails to demonstrate a constitutional violation in connection with his claim concerning electronic monitoring.

### 2.      Sex Offender Conditions

The federal habeas corpus petition filed by Uresti seeks relief because the conditions of release imposed under the Texas sex offender registration program, along with its

registration and counseling requirements, constitute retroactive punishment in violation of the Ex Post Facto and Double Jeopardy Clauses.  Other pleadings filed by Uresti allege that the sex offender conditions of release violate his right to due process and equal protection. For reasons outlined briefly below, Uresti fails to demonstrate that subjecting him to the sex offender conditions of release poses a constitutional violation under any of these theories.

### a.        Ex Post Facto and Double Jeopardy

Uresti cannot demonstrate a constitutional violation of the Ex Post Facto or Double Jeopardy Clauses in connection with the sex offender conditions imposed upon his release because, for the same reasons referenced above in connection with the SISP statute, the parole supervision scheme at issue is non-punitive.  The Texas Court of Criminal Appeals has addressed a challenge to the same state sex offender program imposed on Uresti, concluding that there was no constitutional violation of the Double Jeopardy Clause because the Texas law in dispute is lacking in punitive intent.  *See Rodriguez v. State*, 93 S.W.3d 60 (Tex. Crim. App. 2002).  In doing so, the Court of Criminal Appeals acknowledged that the Texas sex offender program serves the important nonpunitive purpose of promoting public safety.  *See id*. at 74-75.  Characterizing the statute as "civil and remedial in nature," the Court of Criminal Appeals further concluded that its requirements were "not so punitive as to transform the statute into a criminal sanction." *Id*. at 79.  Thus, Texas courts have rejected both double jeopardy and ex post facto challenges of the sort raised by Uresti.  *See id*.; *see also White v. State*, 988 S.W.2d 277, 279 (Tex. App.—Texarkana 1999, no pet.) (holding that the statutory duty of a sex offender to register is remedial rather than punitive).

24

In considering whether the Texas sex offender registration program constituted an ex post facto violation, the Fifth Circuit has also held that the statute "was not intended to be punitive and serves important nonpunitive goals." *Rieck v. Cockrell*, 321 F.3d 487, 488 (5th Cir. 2003) (per curium) (upholding the requirement that a parolee participate in a sex offender counseling program), *cert. denied*, 538 U.S. 1038 (2003); *see also Creekmore v. Attorney General of Texas*, 341 F. Supp.2d 648, 662-63 (E.D. Tex. 2004) (holding that the Texas sex offender statute is non-punitive and not an ex post facto violation). Likewise, other circuit courts of appeals have found that, in the absence of punitive purpose, sex offender statutes imposing requirements similar to those of which Uresti complains, do not violate the Double Jeopardy Clause. *See Femedeer v. Haun*, 227 F.3d 1244, 1254 (10th Cir. 2000) (rejecting a challenge to Utah's sex offender registration statutes under the Double Jeopardy Clause and the Ex Post Facto Clause); *Cutshall v. Sundquist*, 193 F.3d 466, 476 (6th Cir. 1999) (rejecting a challenge to Tennessee's sex offender registration statutes under the Double Jeopardy Clause and the Ex Post Facto Clause), *cert. denied*, 529 U.S. 1053 (2000). It follows that Uresti has no valid challenge to the Texas sex offender conditions under an ex post facto or double jeopardy theory.

### b.    Due Process

Uresti argues further that requiring him to comply with conditions of release designed for sex offenders violates his right to due process. The Fifth Circuit has held that it violates procedural and substantive notions of due process to impose sex offender restrictions, without notice and an opportunity to be heard, upon an individual who has not, in fact, been

convicted of a sex offense.  *See Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004).  Unlike the petitioner in *Coleman*, however, it is undisputed that Uresti has been convicted of aggravated sexual assault, making Uresti's circumstances distinguishable from the ones present in *Coleman*.  Uresti fails to allege any facts showing that imposition of the sex offender conditions of release violates due process in his case.

<strong>c.     Equal Protection</strong>

Uresti also alleges in conclusory fashion that he has been required to comply with sex offender conditions in violation of his right to equal protection.  This claim fails as well.  The Equal Protection Clause simply requires that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Mayabb v. Johnson*, 168 F.3d 863, 870 (5th Cir.), *cert. denied*, 528 U.S. 969 (1999).  A petitioner may also make out an equal protection claim by showing that he has been intentionally treated differently from others similarly situated, without any rational basis, due to illegitimate animus or ill will.  *See Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000) (per curiam) (discussing equal protection claims brought by a "class of one")).  Uresti fails to allege or show that, by requiring his compliance with sex offender restrictions, parole officials intentionally treated him differently from other similarly situated inmates or that the conditions imposed on his release were otherwise motivated by illegal animus or ill will.  Accordingly, Uresti does not establish a valid equal protection claim.

In summary, Uresti has failed to demonstrate a constitutional violation in connection with his placement on SISP, the imposition of electronic monitoring requirements, or the addition of restrictive conditions of parole applicable to sex offenders.  In the absence of showing that he has a valid claim, Uresti not only fails to show that he is entitled to relief, but he further fails to demonstrate he will suffer actual prejudice as the result of the procedural bar.  The respondent is therefore entitled to summary judgment on this issue.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, — U.S. —, 124 S. Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). Given that the issues presented involve clearly settled areas of law, the Court concludes that jurists of reason would not debate whether the petitioner has stated a valid claim, or whether the procedural ruling in this case was correct.  Accordingly, a certificate of appealability will not issue in this case.

## V.   CONCLUSION AND ORDER

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1.   The respondent's supplemental motion for summary judgment (Docket Entry No. 9) is **GRANTED**.

2.   The petition for federal habeas corpus relief is **DENIED** and this case is **DISMISSED** with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **June 23, 2005.**

Nancy F. Atlas
United States District Judge